**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BARBARA L. CORBETT,

                Plaintiff,

                                            Case No. 3:12-cv-1294-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I. Status

Barbara L. Corbett ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). It appears that Plaintiff alleges disability due to back injuries she suffered in a motor vehicle accident. See Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed April 8, 2013, at 112, 212; see also Tr. at 14. On May 15, 1987, Plaintiff filed applications for DIB and SSI, alleging an onset date of October 18, 1986. Tr. at 11.[2] Plaintiff's applications were denied initially and were denied upon reconsideration. Tr. at 11. Plaintiff appeared before an Administrative

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed April 8, 2013; Reference Order (Doc. No. 12), signed April 9, 2013 and entered April 10, 2013.

[2] As explained in more detail below, Plaintiff was part of a class action lawsuit that resulted in a redetermination of her claims. Given the date Plaintiff's applications were filed, the administrative transcript does not contain copies of the applications or some of the other documents related to Plaintiff's claims. The undersigned relies on the summary of Plaintiff's claims contained in the Administrative Law Judge's August 25, 2010 Decision. See Tr. at 11-20.

Law Judge ("ALJ"), now-deceased ALJ Russell Rowell ("ALJ Rowell"), and ALJ Rowell issued a decision on September 8, 1987 denying Plaintiff's claims. Tr. at 11.

On August 12, 1998, a class action lawsuit was filed "alleging bias on the part of" ALJ Rowell. Tr. at 11; see Social Security Administration, HALLEX I-5-4-67, Grant v. Comm'r of Soc. Sec., available at http://www.ssa.gov/OP_Home/hallex/I-05/I-5-4-67.html (last visited Feb. 18, 2014). The class action lawsuit was settled, and as part of the settlement, "the Commissioner was to redetermine the . . . disability claims of those persons who were determined to be class members eligible for relief." Tr. at 11. Plaintiff was a member of that class. Tr. at 11. Plaintiff's "file was reconstructed," and she appeared before ALJ Robert Droker ("ALJ Droker") for a hearing on August 10, 2010 for a redetermination of her claims filed in 1987. Tr. at 11; see Tr. at 194-214; see also Tr. at 83-84.

At the August 10, 2010 hearing, Plaintiff and a vocational expert ("VE") testified. Tr. at 199-213. At the time of that hearing, Plaintiff was fifty-three (53) years old. Tr. at 199. On her alleged onset date (October 18, 1986), Plaintiff was twenty-nine (29) years old. Tr. at 199 (reflecting Plaintiff's date of birth). ALJ Droker issued a Decision on August 25, 2010, finding Plaintiff not disabled from her alleged onset date through April 18, 1988. Tr. at 11-20. On September 24, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 5-7,[3] thereby making ALJ Droker's Decision the final decision of the Commissioner. On November 28, 2012, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and

---

[3] The Notice of Appeals Council Action refers to the ALJ's Decision as being entered on October 4, 2010. The parties do not point out this error, so the undersigned assumes it is a scrivener's error having no substantive effect on Plaintiff's case.

1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On June 24, 2013, Plaintiff filed a Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 16; "Pl.'s Mem."), alleging one error. Plaintiff argues that ALJ Droker erred in failing "to provide any credible evidence that the occupations he determined [Plaintiff] could perform existed in significant numbers in the national economy." Pl.'s Mem. at 9 (emphasis omitted). The Commissioner responded to Plaintiff's argument in her Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem."), filed August 26, 2013. The Commissioner asserts that "[t]he testimony of the [VE] provided substantial evidence to support the [ALJ's] finding that Plaintiff could perform other work . . . ." Def.'s Mem. at 4 (capitalization omitted). Plaintiff also filed a Reply Memorandum (Doc. No. 20) on September 11, 2013. After a thorough review of the entire record and consideration of the parties' respective papers, the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairments that meets or medically equals one listed in the Regulations; (4) can perform PRW; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, ALJ Droker followed the five-step sequential inquiry.[5] See Tr. at 13-20. At step one, ALJ Droker observed that Plaintiff "did not engage in substantial gainful activity during October 18, 1986 through April 18, 1988." Tr. at 14 (emphasis and citation omitted). At step two, ALJ Droker found Plaintiff suffered from "the following severe impairments: disorders of the back, status post motor vehicle accident." Tr. at 14 (emphasis and citation omitted). At step three, ALJ Droker ascertained Plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 14 (emphasis and citation omitted). ALJ Droker determined Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) and [§] 416.967(b) with limitations. She must avoid ladders and unprotected heights and must avoid the operation of heavy moving machinery. She has no skills and is limited to simple, unskilled, entry-level jobs. She can occasionally bend, stoop, squat, crouch, kneel or crawl. She must avoid the pushing or pulling of arm controls; avoid foot controls; and must avoid overhead reaching.

Tr. at 14 (emphasis omitted). At step four, ALJ Droker found Plaintiff "had no past relevant work." Tr. at 18 (emphasis omitted). At step five, after considering Plaintiff's age, education (high school), work experience, and RFC, ALJ Droker found "there were jobs that existed in

---

[5] While not expressly stated at each step, it is apparent from the Decision that ALJ Droker was only considering the time period between October 18, 1986 and April 18, 1988. See generally Tr. at 11-20.

significant numbers in the national economy that [Plaintiff] could [have] perform[ed]." Tr. at 18 (emphasis and citation omitted).  Those jobs included cashier II, ticket seller, housekeeping/cleaner, and addresser. Tr. at 19.  The ALJ concluded that Plaintiff "ha[d] not been under a disability . . . from October 18, 1986, [the alleged onset date] through April 18, 1988." Tr. at 19 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial

evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Prior to addressing Plaintiff's one issue on appeal, the undersigned notes that in a footnote in her memorandum, Plaintiff states she "is unclear as to why [ALJ Droker] adjudicated the time period of October 18, 1986 through April 18, 1988 in light of the Hallex provision that seems to read that the proper period for adjudication in a *Grant* claim is the original alleged onset date of disability through the date of ALJ Rowell's decision. In this matter, according to [ALJ Droker], these dates are October 18, 1986 (onset) and September 8, 1987 (ALJ Rowell's denial of [Plaintiff's] claim)." Pl.'s Mem. at 3 n.1; see Tr. at 11. Defendant does not address this contention in her memorandum.

Plaintiff appears to be correct. See Social Security Administration, HALLEX I-5-4-67, Grant v. Comm'r of Soc. Sec., at VI.A.1, available at http://www.ssa.gov/OP_Home/hallex/I-05/I-5-4-67.html (last visited Feb. 18, 2014) (noting that "[t]he period at issue begins with the onset date that was alleged before the subject ALJ (now deceased ALJ Rowell) and ends with the date of [ALJ Rowell's] decision"). According to ALJ Droker, Plaintiff's alleged onset date is October 18, 1986, and ALJ Rowell issued a decision denying Plaintiff's claims on September 8, 1987. Tr. at 11. ALJ Droker does not explain and the undersigned cannot determine why the end date of April 18, 1988 was used in the Decision. Given that this matter is due to be reversed and remanded, the undersigned finds it appropriate to direct that the Commissioner identify the appropriate relevant time period on remand.

Plaintiff's one issue on appeal focuses on the ALJ's step five finding that jobs existed in significant numbers in the national economy that Plaintiff could have performed. See Pl.'s Mem. at 7-12. According to Plaintiff, "there is absolutely no support found in the record for the number of jobs the ALJ found to exist for each occupation." Id. at 9. The VE testified as to the number of jobs existing as of the date of the hearing, "and [ALJ Droker] then reduced the numbers given by the VE by 40% to come up with" the numbers allegedly existing during the relevant time period. Id. In response, Defendant argues that ALJ Droker was entitled to rely on the VE's testimony, and that the VE's testimony with respect to the number of available jobs was "based upon a reasonable projection of the population statistics for the period at issue." Def.'s Mem. at 7.

As noted above, at step five of the sequential evaluation process, the ALJ determines whether the claimant retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips, 357 F.3d at 1237. The Commissioner, bearing the burden at step five, is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); see 20 C.F.R. § 404.1566(a)-(b); see also Bowen, 482 U.S. at 146 n.5. "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted). To do so, the Commissioner may employ the expertise of a VE. See id.; see also 20 C.F.R. § 404.1566(e). When determining whether a significant number of jobs exist, the ALJ may "take administrative notice of reliable job information available from various governmental and other publications," such as the

"Dictionary of Occupational Titles, published by the Department of Labor" ("DOT"). 20 C.F.R. § 404.1566(d)(1).

At the August 10, 2010 hearing, ALJ Droker posed a hypothetical to the VE, and asked the VE whether there were jobs "in the region" that Plaintiff could have performed during the relevant time period. Tr. at 209. The following exchange then occurred:

[VE]: In my computer program I can go back to the year 2007 for employment numbers. That's as far back as I can go.

[ALJ]: Can you give us an estimate based upon your 20 plus years of experience as to what the percentage, general, general percentage increase, decrease in available jobs might have been. I'll take your best extrapolation at this point.

[VE]: And it would be a guess, Your Honor.

[ALJ]: Your best guess upon your professional history and experience would be at least as much information as we could expect under the circumstances.

[VE]: Okay, let me try something.

[ALJ]: Actually, the DOT was current back then.

[VE]: Yes, it really was.

[ALJ]: Let's put it this way. The state of Florida has about 19 million people today, had about 12 million people back in that part of the late '80s my best information reveals so if you do a 40 percent reduction on the current jobs I'll take that estimate as being reasonably, a reasonable projection.

[VE]: A 40 percent reduction?

[ALJ]: Yes.

[VE]: Okay I'll provide you with - -

[ALJ]: That's based on the population differential.

[VE]: Okay, I'm not a math whiz on this and that's what I was trying to look to see if there was some kind of percentage that I could find. So I can report on

> current day and we'll let someone else who has better math skills than me do the extrapolation.
>
> [ALJ]: Well, I guess my question for you from a vocational perspective is my projection of what the population stats were is that a reasonable estimate as to how reductions for the types of jobs that you would be proposing would that reflect that? Would that be a reasonable projection for purposes of determining the population of jobs?
>
> [VE]: Yes.

Tr. at 209-10. The VE then identified four jobs that Plaintiff could have performed, and she provided the number currently available (as of the 2010 hearing) in the region (the state of Florida) and in the national economy for each job. Tr. at 211. In his Decision, the ALJ reduced the numbers provided by the VE by 40%. See Tr. at 19.

While an ALJ is generally entitled to rely on a VE's testimony, here, it is unclear on what information the VE and the ALJ relied upon to determine that a 40% reduction was appropriate in the region and in the national economy. The ALJ stated that his "best information reveals" that a 40% reduction was appropriate given the population of Florida, Tr. at 210, but he did not state where that "information" came from, and there is no indication in the administrative transcript or the Decision that the population information provided by the ALJ was accurate (despite the fact that the VE agreed with it). Rather, the 40% reduction appears to be "mere intuition or conjecture." Wilson, 284 F.3d at 1227.

Even if it was accurate, as Plaintiff points out, there is nothing in the record that would show that the population change in the state of Florida was equivalent to the population change in the entire nation. In light of the lack of explanation surrounding the determination that a 40% reduction was appropriate, the undersigned cannot find that the Decision is supported by substantial evidence.

## V.  Conclusion

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) Identify the appropriate relevant time period for Plaintiff's claims;
>
> (B) Reevaluate the step five finding, articulate the jobs that Plaintiff could have performed and the number of those jobs that would have been available during the relevant time period in the national economy; and provide a reasonable basis supported by substantial evidence for those numbers; and
>
> (C) Take such other action as may be necessary to resolve these claims properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on February 21, 2014.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of Record